UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ronald D. Skelton,

    Plaintiff,

v.

Sara Lee Corp.,

    Defendant.

Case No. 1:03cv276

Judge Michael H. Watson

## OPINION AND ORDER

Before the Court is the December 15, 2004 Motion of Defendant Sara Lee Corporation (hereinafter "Defendant") for Summary Judgment (Doc. 53). Plaintiff Ronald D. Skelton (hereinafter "Plaintiff") filed a Response in Opposition on December 21, 2004 (Doc. 55). Defendant filed a Reply Memorandum on December 30, 2004 (Doc. 56).

This matter is now ripe for review. For the reasons stated herein, Defendant's Motion for Summary Judgment is hereby **GRANTED**.

I.    **FACTS**

Defendant manufactures and markets various brand-name food products, such as Hillshire Farms, Sara Lee, Jimmy Dean and Ballpark. Plaintiff began working for Defendant in 1979 in quality control. (Plaintiff Depo. p. 14) In June, 1980, he became a distribution supervisor, a position he held until he became a load planner (hereinafter "planner") in January, 1985. (*Id.* pp. 14-15) Plaintiff was a planner in Defendant's Transportation Department until his termination. (*Id.* p. 15)

Prior to 2000, Defendant's nine primary brands were decentralized, operating as nine independent companies. (Rogers Aff. ¶7, Doc. 53, Exh. A) Beginning In 2000, to improve efficiency and provide better customer satisfaction, Defendant drastically changed the way it did business. (Id. ¶9) The biggest change was the consolidation its business into a single corporate headquarters in Blue Ash, Ohio, resulting in nine separate companies operating as one. (Id. ¶10)

At this time, Defendant also centralized its transportation function, including the planner position, into its Spring Grove, Ohio (hereinafter "Spring Grove") facility. This resulted in the elimination of the planner position at production facilities and several planners were laid-off. (Id. 11) However, Defendant hired nine new planners in Spring Grove during the first half of 2002. (Gibson Dep., p. 28)

The Transportation Department is responsible for:

(1)  the distribution of products from the various production facilities to one of the five regional warehousing and distribution facilities known as "mixing centers"; and
(2)  the combination of product at the mixing center onto truckloads for shipment to customers.

(Rogers Aff. ¶4) A planner's job is to ensure these functions are carried out to meet customer expectations at the lowest possible cost. One of the principal duties of a planner is "building loads", which is selecting the carrier for each shipment and the most efficient arrangement of orders on the trucks. (Id. ¶5) A planner is also responsible for addressing problems such as carrier delays, miscommunications and rush orders. (Id. ¶6)

At the time of Defendant's centralization, Plaintiff worked at the Spring Grove facility and, as such, his position was not eliminated. (Id., ¶13; Plaintiff Dep. pp. 25-26)

Thus, he began working in the new, centralized Transportation Department, performing an essentially new job planning the distribution of all of Defendant's brands from the five mixing centers to Defendant's grocery store customers. (Id. ¶14, pp. 25-27)

The centralization of the transportation function was problematic. The planners operating remotely from Spring Grove made it difficult to manage the numerous problems which arose daily. Instead of the planners dealing with problems on site, as it was prior to centralization, they were dealing with them by phone and email. (Rogers Aff. ¶17) The new way to deal with problems proved ineffective. (Id. ¶ 18) The problems with the new system quickly became acute and Defendant determined the best way to address it was to station planners on-site at the mixing centers, rather than operating remotely from Spring Grove. (Id. ¶20)

Thus, in the fall of 2002, Defendant returned to decentralized load planning by relocating to the five mixing centers the load planning positions. (Id. 22) When Defendant made this decision, there were 17 planners at the Spring Grove facility and several positions needed to be eliminated. (Id. ¶21-22)

In the beginning of October, 2002, Larry Rogers, Vice President of Transportation, discussed the decentralization of the load planning function with Phil Lower, Russ Gibson and Joyce Humphrey. (Lower Dep. pp. 96-97) Mr. Lower was a consultant hired to address problems in the department who had worked directly with several planners in the preceding months. (Id., pp. 22-24, 64-67) Mr. Gibson and Ms. Humphrey were managers who directly supervised the planners, including Plaintiff. (Gibson Dep., p. 18; Humphrey Dep., pp. 53-56)

On October 7, 2002, Mr. Rogers, along with Monica Mehta, Defendant's Human

Resources Manager, met with the entire Transportation Department to inform them of the decision to decentralize. (Skelton Dep., pp. 34-36) Mr. Rogers explained that several planner positions would be eliminated in Spring Grove and new planners would be hired in the regional mixing centers. (Mehta Depo., pp. 25-26) Mr. Rogers informed the planners that Defendant would retain those who were willing to take on as much work and responsibility as needed to ensure the department's success. (Gibson Dep., p. 52) Further, he informed the planners they would be required to interview for the positions which would remain in Spring Grove and that those who were not retained could apply for the positions being created at the mixing centers. (Mehta Dep., pp. 25-26; Rogers Dep., pp. 49-50)

During the next week, Mr. Rogers and Ms. Humphrey interviewed each of the planners. (Humphrey Dep., pp. 48-51) Messrs. Rogers and Lowers and Ms. Humphrey met after the interviews to discuss their initial impressions. (*Id.,* p. 58; Rogers Dep, p. 59) By this time, Defendant informed Mr. Gibson his position was being eliminated and he expressed a desire not to take an active role selecting which planners to retain. (Gibson, pp. 48-49) Nonetheless, Mr. Gibson provided input on the planners to Ms. Humphrey, which was considered in the final analysis. (*Id.,* pp. 48-49; Humphrey Dep., pp. 42-44).

Messrs. Rogers and Lowers and Ms. Humphrey met again to determine which planners to retain. (Humphrey Dep., pp. 42-43; 58-59) A forced ranking was done with the goal of identifying the planners who were:

1. willing to devote the greatest amount of time and effort to their jobs;
2. go beyond their regular duties; and
3. work hours in excess of their regular workday.

(Rogers Aff. ¶24; Rogers Dep., pp. 58-60; Humphrey Dep., pp. 42-43) After several hours, a final list was developed which ranked the planners. (Humphrey Dep., pp. 40-43; Rogers Dep., pp. 44-45; Exh 1) Plaintiff was selected for termination.

On October 18, 2002, Plaintiff was notified he would be terminated from this position effective February 28, 2003. At the time of his termination he was 46 years old.

Plaintiff filed the instant action on April 16, 2003, asserting claims for age discrimination in violation of the ADEA, in violation of O.R.C. §§4112.02 and 4112.99, and Ohio public policy.

## II. ANALYSIS

### A. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(C). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will

be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

      B      Age Discrimination

The ADEA provides: "It shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.§ 623. To prevail in an action under the ADEA, a plaintiff must show his age had a "determinative influence on the outcome" of the employment decision. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000), *quoting, Hazen* Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).

In a case alleging employment discrimination in violation of the ADEA, a plaintiff can withstand a motion for summary judgment by presenting either direct evidence of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive. *Rallins v. Ohio State University*, 191 F.Supp.2d 920, 928 (S.D. Ohio 2002), *citing Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348-49 (6th Cir. 1997). Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). (internal quotation marks omitted).

Plaintiff contends he has direct evidence of age discrimination. Specifically, he asserts in 2002, Mr. Gibson, Plaintiff's supervisor stated on one or more occasions words to the effect that "Ron had been around since Christ was a baby." (Gibson Dep.,

p. 65; Plaintiff Dep., 49) Upon consideration, the Court concludes a reasonable trier of fact could believe Mr. Gibson made this statement and still conclude Defendant's termination of Plaintiff's employment was lawful. See Peyton v. Kellermeyer Co., 115 Fed. Appx. 825, (6th Cir. 2004) (comments by owner of business that plaintiff wanted to retire because he was "getting too old" was not sufficient to establish direct evidence). Accordingly, this testimony fails to meet the Sixth Circuit's "direct evidence" test.

A discrimination claim presented by circumstantial evidence is to be analyzed using the burden-shifting approach set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). First, a plaintiff bears the burden of proving a prima facie case of discrimination by establishing:

1. he is a member of a protected class;
2. he suffered an adverse employment action;
3. he was qualified for the position in question; and
4. he was replaced by a person outside of the protected class.

Smith v. City of Salem, Ohio, 378 F.3d 566, 570 (6th Cir. 2004), citing Perry v. McGinnis, 209 F.3d 597, 601 (6th Cir. 2000); Mitchell v. Toledo Hosp., 964 F.2d 577, 582-583 (6th Cir. 1992).

However, when an employee is terminated pursuant to a reduction in force (hereinafter "RIF"), the McDonnell Douglas framework is altered. See Barnes v. GenCorp, Inc. 896 F.2d 1457, 1465, n.1 (6th Cir. 1990). Specifically, the fourth element is modified because the employer does not replace the employee. Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 371 (6th Cir. 1999) As such, the plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons." Id., quoting

*Barnes* at 1465. This "extra" evidence must be "sufficiently probative" to permit the fact finder to believe the defendant intentionally discriminated against the worker. *Barnes* at 1466.

Upon establishing a *prima facie* case, an inference of discrimination arises, and the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).[1] If defendant provides a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to demonstrate the offered reason is pretextual. *McDonnell Douglas* at 804-805. The plaintiff may prove pretext by showing either that:

1. the proffered reason had no basis in fact,
2. the proffered reason did not actually motivate the adverse action, or
3. the proffered reason was insufficient to motivate the adverse action.

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

The first issue to resolve is whether the heightened RIF standard under *Barnes* applies currently. Plaintiff argues it does not as Defendant eliminated seven planner positions in Spring Grove and moved the jobs elsewhere. However, Defendant contends that as the planner positions were relocated from one location to another, the RIF standard does apply. Defendant relies on *Allen v. Diebold, Inc.*, 33 F.3d 674 (6th Cir. 1994), in support.

---

[1] It should be noted, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine* at 253. The *prima facie* case merely serves to raise a rebuttable presumption of discrimination by "eliminating the most common nondiscriminatory reasons for the [employer's treatment of plaintiff]," *Id.* at 254, and not to satisfy the plaintiff's ultimate burden of persuasion.

Upon review, the Court concludes the heightened RIF standard established in *Barnes* applies to the current circumstances. In *Allen*, Diebold closed two Ohio plants and opened plants in Virginia and South Carolina. The *Allen* court, in determining the *Barnes* standard was helpful, opined:

> Although plant closing and relocations are factually distinct from a reduction in force situation, we think the standard articulated in *Barnes* is somewhat helpful. Instead of showing direct, circumstantial or statistical evidence that older workers were discharged while younger workers were retained, plaintiffs in a plant closing case must show that an employer's decisions regarding which factories to close or downsize were based on consideration of the ages of the workers at those factories.

*Id.*, at 678. As such, as argued by Defendant, the principles advanced by the *Allen* court are relevant here. Defendant did not replace Plaintiff's position in Spring Grove. Instead, Defendant eliminated the positions in Spring Grove and relocated them to other facilities around the country to be more efficient. As such, the Court will analyze Plaintiff's *prima facie* case pursuant to the *Barnes* standard.

The parties do not dispute Plaintiff establishes the first three elements of the *McDonald Douglas* test. Instead, the issue is whether Plaintiff presents "additional direct, circumstantial, or statistical evidence tending to indicate that Defendant singled him out for discharge due to his age."

Plaintiff argues age-related bias in the selection process is evidenced by the fact he was more qualified than the younger planners who were retained. Plaintiff contends he was with the company for over 23 years, over 17 years as a planner. In contrast, Plaintiff argues of the planners who were retained, the most senior had less than three

years of experience as a planner. As such, Plaintiff asserts he was more qualified than the planners who were retained.

In reviewing the ages of the planners who were retained, all were younger than Plaintiff, however, three of the eight were within the protected group. "[T]he fact that a younger...employee was retained while Plaintiff was terminated, taken alone, is simply insufficient to establish discriminatory motives." *Brown v. EG&G Mound Applied Techs., Inc.*, 117 F. Supp. 2d 671, 678 (S.D.Ohio 2000). Instead, Defendant must present evidence of age-related bias in the selection process. *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 422. As such, Plaintiff must establish some nexus between the actions of the employer and the employee's age. The bald assertion that a nexus exists is insufficient. *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir. 1996), *cited in EEOC v. Texas Instrument, Inc.*, 100 F.3d 1173, 1182.

Upon review, the Court concludes Plaintiff fails to establish the fourth prong of the *prima facie* case. The record is simply devoid of evidence of age-related bias in the selection process; of a connection between Plaintiff's age and the decision to terminate Plaintiff's employment. As argued by Defendant, Plaintiff fails to come forward with any evidence he was singled out for discharge because of his age. While Plaintiff finds fault with the selection process by relying upon the disparity in experience and discussing the performance issues of the planners who were retained, this evidence simply suggests the process employed by Defendant was imperfect. *See e.g., Cindea v. Jackson Twp.*, No. 97-3280, 1998 U.S. App. Lexis 2748 (6th Cir., Feb. 17, 1998) (evidence that a rating system was imperfect, without more, does not create an

inference of nefarious motivation); *Cotton v. City of Alameda,* 812 F.2d 1245, 1249 (9th Cir. 1987) ("the ADEA does not make it unlawful for an employer to do a poor job of selecting employees. It merely makes it unlawful to discriminate on the basis of age."). While Plaintiff points to flaws in the selection process, he fails to identify a basis for an inference that a prohibited factor may have contributed to her selection. *See Skalka,* 178 F.3d at 422.

Moreover, with respect to Plaintiff's allegation that less experienced employees were retained, Defendant, in determining who to retain, did not emphasize experience, knowledge or tenure. Instead, Defendant focused on the planners who were willing to put forth the greatest amount of time and effort into the position. The Transportation Department was in a crisis due to the failure of the reorganization and Defendant needed planners who would work as long as necessary to reorganization a success. (Humphrey Dep., pp. 42-44, 56; Gibson Dep., p. 52, 59-60, 77-79; Rogers Aff. ¶¶23-24) In evaluating Plaintiff, it was determined his work habits did not mesh with Defendant's needs. Instead, he "did his eight-hour day and went home". (Humphrey Dep., p. 56) Further, he "did his job. But frankly, that's all he did, was his job. A lot of people were showing themselves to take on a lot more responsibility than just their jobs, which was what was needed." (Gibson Dep., p. 75) Moreover, the reviewers "didn't see any evidence that [Plaintiff] was working with other people, that he would do more than what the specific request was." (Lower Dep., pp.75-76) Plaintiff's assertion that he had better qualifications than the other candidates is not sufficient to establish the fourth prong as the inquiry is "whether the other candidates are more qualified with respect to

the criteria that [Defendant] actually employs." *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1285 (9th Cir. 2000), *quoting Cotton,* 812 F.2d at 1249.

Accordingly, construing the evidence in a light most favorable to Plaintiff, the Court concludes he fails to present additional circumstantial or statistical evidence which tends to indicate Defendant singled him out for discharge because of his age.

C.  Ohio Public Policy

Plaintiff's public policy claim for age discrimination necessarily fails as he is unable to establish a statutory claim. *Hausler v. General Electric Co.,* 2005 U.S. App. Lexis 10983 (6th Cir. June 9, 2005).

## III. CONCLUSION

Reviewing the evidence in a light most favorable to Plaintiff, the Court finds that summary judgment is appropriate. The record does not support a finding that Plaintiff was terminated by Defendant based upon age. Accordingly, the December 15, 2004 Motion of Defendant for Summary Judgment (Doc. 53) is hereby **GRANTED.**

**IT IS SO ORDERED.**

Michael H. Watson, Judge
United States District Court